[No. D036065. Fourth Dist., Div. One. Dec. 27, 2001.]

Estate of VILJO PETER KAILA, Deceased.
AUNE MARIA PIHLAJAMAA, Petitioner and Appellant, v.
VERNER KAIHLAN, Objector and Respondent.

1124

**COUNSEL**

Ross, Dixon & Bell and Jon R. Williams for Petitioner and Appellant.

Ross, Sacks & Glazier, Bruce S. Ross; Law Offices of Ava Anttila and Ava Anttila for Objector and Respondent.

## OPINION

McDONALD, J.—Aune Maria Pihlajamaa (Maria) appeals an order denying her Probate Code section 21320[1] petition (Petition) for a determination whether her proposed action (Proposed Action) to enforce an alleged domestic partnership agreement with and interpret the will of Viljo Peter Kaila (Viljo) would be a contest under the no contest clause of Viljo's will. Maria contends the trial court erred by concluding (1) extrinsic evidence was admissible to interpret the no contest clause, and (2) admission of extrinsic evidence to interpret that clause would require a determination of the merits of her Proposed Action and therefore section 21320 relief was precluded. We reverse and remand for further proceedings consistent with this opinion.

### FACTUAL AND PROCEDURAL BACKGROUND

Although Viljo and Maria never married, they apparently lived together for over 30 years. In 1992 Viljo executed a will (Will) that, inter alia, devised 20 percent of his estate to Maria if she survived him and divided the remainder of his estate among his seven brothers and sisters.[2] Viljo nominated Maria and his brother Verner Kaihlan (Verner) to be co-executors of the Will. The Will contained the following no contest clause: "I have intentionally omitted all of my heirs or other relatives who are not specifically mentioned herein, and I hereby specifically disinherit any person claiming to be my heir at law, except as otherwise mentioned in this Will. *If any person shall establish a right to any part of my estate, whether or not such person is related in any way by blood to me and if I died intestate would be entitled to any part of my estate, to such person I give and bequeath the sum of $1.00 only, and no further interest in my estate.*" (Italics added.)

In 1999 Viljo died. The Probate Division of the San Diego County Superior Court admitted the Will to probate and issued letters testamentary appointing Maria and Verner as co-executors.

On January 25, 2000, Maria filed her Petition requesting that the probate court determine whether her Proposed Action would be a contest under the no contest clause of the Will. She attached a copy of her Proposed Action. If filed, the Proposed Action would allege that Viljo and Maria had a domestic partnership agreement to share equally all assets acquired by them during their 30-year relationship. If filed, it would request that the court interpret the Will to be consistent with that agreement, retitle all real and personal property held by Viljo as domestic partnership property, and find that Maria

---

[1] All statutory references are to the Probate Code.
[2] The Will stated that Viljo was not married and had no children.

has an equal one-half share in that property. The Petition asserted that the Proposed Action would not constitute a contest under the no contest clause of the Will because that clause concerned only persons who claimed to be Viljo's heirs or claimed part of his estate's assets by invalidating the Will's provisions. Furthermore, it asserted that the Proposed Action would not seek invalidation of any part of the Will or attempt to establish a right to any part of Viljo's estate, but would only seek to have property held by Viljo at the time of his death properly recognized and retitled as domestic partnership property. The Petition also asserted that the court should not consider any extrinsic evidence on Viljo's intent regarding the Will's no contest clause because no contest clauses must be strictly construed.

Verner, as a co-executor of the Will, opposed the Petition and argued, inter alia, that the court must admit and consider extrinsic evidence on Viljo's intent regarding the Will's no contest clause.

On April 14, 2000, a hearing was held on the court's tentative ruling denying the Petition. In its tentative ruling, the court found there were ambiguities in the Will's language that would necessarily require consideration of extrinsic evidence on Viljo's intent and a determination of the merits of the Proposed Action. The court stated the Petition asked it "to determine that [the Proposed Action] is not a contest, and [it] cannot grant that request because there is extrinsic evidence and would have to be analyzed on the merits [of the Proposed Action]."

On May 19, 2000, the court issued its order denying the Petition, finding as follows:

"1. In her [Petition], [Maria] seeks a determination that filing and pursuing the [Proposed Action] does not violate the no contest clause of [the] Will . . . ;

"2. In her [Proposed Action] accompanying [her Petition], [Maria] claims that she is entitled to one-half of the property held solely in [Viljo's] name and inventoried in [his] estate based on [Maria's] alleged agreement with [Viljo] to equally share all property acquired during cohabitation, and to the devise of 20% of [his] estate under [the] Will . . . .

"3. [Viljo's] Will . . . and various terms and provisions therein are ambiguous, including: [¶] (a) 'nature and extent of my estate and property' as set forth in Paragraph SECOND; [¶] (b) 'all property which I have the right to dispose of by will' as set forth in Paragraph SECOND; [¶] (c) references to 'estate' as set forth in Paragraphs SECOND, THIRD, FOURTH, FIFTH, and

SIXTH; [and] [¶] (d) the persons to whom the no contest clause in Paragraph SIXTH applies.

"4. Extrinsic evidence is necessary to determine [Viljo's] intent in general, to resolve the ambiguities in [his] Will . . . , and to determine whether [he] intended the Will's no contest clause to apply to [Maria's] claims in her [Proposed Action] and/or intended her to be forced to make an election. The taking of evidence in connection with this determination is authorized by *inter alia, Burch v. George* (1994) 7 Cal.4th 246 [27 Cal.Rptr.2d 165, 866 P.2d 92]; *Estate of Russell* (1968) 69 Cal.2d 200 [70 Cal.Rptr. 561, 444 P.2d 353]; Prob. [Code,] § 6111.5. However, such evidence will be received at the time of trial, if any, and not in connection with the present petition.

"5. In light of the need to review the extrinsic evidence, the [Petition] should be denied."

Maria timely filed a notice of appeal.[3]

### DISCUSSION

### I

*No Contest Clauses and Section 21320 Petitions Generally*

■ The purpose of no contest clauses "is to discourage will contests by imposing a penalty of forfeiture against beneficiaries who challenge the will." (*Estate of Black* (1984) 160 Cal.App.3d 582, 586 [206 Cal.Rptr. 663].) "An in terrorem or no contest clause in a will or trust instrument creates a condition upon gifts and dispositions provided therein. [Citation.] In essence, a no contest clause conditions a beneficiary's right to take the share provided to that beneficiary under such an instrument upon the beneficiary's agreement to acquiesce to the terms of the instrument." (*Burch v. George, supra,* 7 Cal.4th 246, 254.) Although no contest clauses are valid and favored by the public policies of discouraging litigation and giving effect to the testator's intent, they are also disfavored by the policy against forfeitures and therefore are strictly construed and may not extend beyond what plainly was the testator's intent. (*Ibid.; Estate of Black, supra,* at pp. 586-587; *Estate of Richter* (1993) 12 Cal.App.4th 1361, 1367 [16 Cal.Rptr.2d 108]; § 21303.) Section 21304 provides: "In determining the intent of the transferor, a no contest clause shall be strictly construed." Nevertheless, "it is the testator's intentions that control, and a court 'must not rewrite the [testator's] will in

---

[3]An order denying a section 21320 petition is appealable pursuant to section 1303, subdivision (k).

such a way as to immunize legal proceedings plainly intended to frustrate [the testator's] unequivocally expressed intent from the reach of the no-contest clause.' [Citation.]" (*Burch v. George, supra,* at p. 255.)

Section 21300, subdivision (b) defines a no contest clause as "a provision in an otherwise valid instrument that, if enforced, would penalize a beneficiary if the beneficiary brings a contest." Section 21300, subdivision (a) defines a contest as "an attack in a proceeding on an instrument or on a provision in an instrument."[4] " 'Whether there has been a "contest" within the meaning of a particular no-contest clause depends upon the circumstances of the particular case and the language used. [Citation.]' [Citations.]" (*Burch v. George, supra,* 7 Cal.4th at pp. 254-255, quoting *Estate of Watson* (1986) 177 Cal.App.3d 569, 572 [223 Cal.Rptr. 14].)

"In 1989 the Legislature codified within the Probate Code much of the existing case law governing enforcement of no contest clauses. (Stats. 1989, ch. 544, § 19, p. 1825; repealed and reenacted by Stats. 1990, ch. 79, § 14, p. 463, operative July 1, 1991.)" (*Genger v. Delsol* (1997) 56 Cal.App.4th 1410, 1419 [66 Cal.Rptr.2d 527].) In proposing this codification, the Law Revision Commission commented in part: "A major concern with the application of existing California law is that a beneficiary cannot predict with any consistency when an activity will be held to fall within the proscription of a particular no contest clause. To increase predictability, the proposed law recognizes that a no contest clause is to be strictly construed in determining the donor's intent. This is consistent with the public policy to avoid a forfeiture absent the donor's clear intent. The law also makes clear that a request by a beneficiary for declaratory relief in the form of a petition for construction of the instrument to determine whether a particular activity would violate a no contest clause does not itself trigger operation of the clause." (Recommendation Relating to No Contest Clauses (Jan. 1989) 20 Cal. Law Revision Com. Rep. (1990) p. 12, fns. omitted; *Genger v. Delsol, supra,* at p. 1419.) ■ Section 21320 provides a procedure for obtaining declaratory relief regarding whether a proposed action would constitute a contest under a particular will or other instrument:

"(a) If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination whether

---

[4]For wills and other instruments executed after January 1, 2001, newly enacted section 21305, subdivision (a) provides: "[T]he following actions shall not constitute a contest unless expressly identified in the no contest clause as a violation of the clause: [¶] (1) The filing of a creditor's claim or prosecution of an action based upon it. [¶] (2) *An action or proceeding to determine the character of property.* [¶] (3) A challenge to the validity of an instrument, contract, agreement, beneficiary designation, or other document, other than the instrument containing the no contest clause. [¶] (4) A petition for settlement or for compromise affecting the terms of the instrument." (Italics added.) Because Viljo's Will was executed in 1992, section 21305, subdivision (a) does not apply in this case.

a particular motion, petition, or other act by the beneficiary . . . would be a contest within the terms of the no contest clause.

"(b) A no contest clause is not enforceable against a beneficiary to the extent an application under subdivision (a) by the beneficiary is limited to the procedure and purpose described in subdivision (a) and does not require a determination of the merits of the motion, petition, or other act by the beneficiary." (§ 21320.) "The declaratory relief procedure provided in section 21320 . . . codified a practice [that] had been permitted by the courts. [Citations.]" (*Genger v. Delsol, supra,* 56 Cal.App.4th at p. 1419, fn. 3.) "[S]ection 21320 provides . . . a 'safe harbor' for beneficiaries who seek an advance judicial determination of whether a proposed legal challenge would be a contest [under a particular no contest clause]." (*Id.* at pp. 1428-1429.) If a court determines that a particular proposed action would constitute a contest, the beneficiary will then be able to make an informed decision whether to pursue the contest and forfeit his or her rights under a will *or* to forgo that contest and accede to the will's provisions. (*Id.* at p. 1429.)

## II

*Extrinsic Evidence May Be Admissible in a Section 21320 Proceeding to Determine the Meaning and Intent of a No Contest Clause*

 Maria contends the trial court erred by concluding extrinsic evidence was admissible to determine the intent of the Will's no contest clause.

## A

*Burch* relied on the language of the trust instrument and uncontroverted extrinsic evidence in concluding that the proposed action in that case would constitute a contest under the no contest clause of the particular trust. (*Burch v. George, supra,* 7 Cal.4th at pp. 258, 263, 273.) *Burch* noted: "Evidence of the circumstances surrounding the execution of the trust instrument is properly admissible to ascertain its meaning and intent. (Prob. Code, § 6111.5; see also *Estate of Russell, supra,* 69 Cal.2d at pp. 206-207, 212; *Estate of Basore* (1971) 19 Cal.App.3d 623, 630 [96 Cal.Rptr. 874].) Contrary to the assertion made by the dissent (dis. opn. of Kennard, J., *post,* at pp. 277-278), resort to extrinsic evidence is appropriate in construing no contest clauses. As one authority relied upon by the dissent acknowledges, 'if it is relevant to the clause in question, virtually all evidence of the circumstances surrounding the will's execution may well be admissible to show the existence of an ambiguity and to help construe it.' [Citation.]" (*Burch v. George, supra,* at p. 258, fn. 8.)

The ultimate question in this case is whether Maria's Proposed Action is a contest within Viljo's intended meaning of the no contest clause in the Will. ▮ *Newman v. Wells Fargo Bank* (1996) 14 Cal.4th 126, 134 [59 Cal.Rptr.2d 2, 926 P.2d 969] summarized the rules that generally apply in discerning testamentary intent: " 'The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument.' (§ 21102, subd. (a).) ' "The paramount rule in the construction of wills, to which all other rules must yield, is that a will is to be construed according to the intention of the testator as expressed therein, and this intention must be given effect as far as possible." (*Estate of Wilson* (1920) 184 Cal. 63, 66-67 [193 P. 581].) The rule is imbedded in the Probate Code. ([Former] § 101.) Its objective is to ascertain what the testator meant by the language he used.' (*Estate of Russell*[, *supra*,] 69 Cal.2d [at pp.] 205-206 . . . , fns. omitted.)"

Section 21102 states:

"(a) The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument.

"(b) The rules of construction expressed in this part apply where the intention of the transferor is not indicated by the instrument."[5] A secondary authority notes: "Because the meaning of a will depends on the testator's intention, precedent is of small value. The same words used by different testators may have different meanings because the testators had different intentions." (3 Cal. Decedent Estate Practice (Cont.Ed.Bar 2001) Entitlement to Estate Distribution, § 24.7, p. 24-13.)

"In arriving at a testator's intent the entire context of the will must be examined in the light of the surrounding facts and circumstances. [Citations.] In one sense, of course, . . . evidence of attendant facts is inevitably necessary in every case in order to relate the words of the will to persons and facts of which the will speaks. [Citations.]" (*Estate of Brown* (1962) 199 Cal.App.2d 274, 279-280 [18 Cal.Rptr. 435].)

*Estate of Russell* stated: "In order to determine initially whether the terms of *any written instrument* are clear, definite and free from ambiguity the court must examine the instrument in the light of the circumstances surrounding[] its execution so as to ascertain what the parties meant by the words used. Only then can it be determined whether the seemingly clear language of the instrument is in fact ambiguous. 'Words are used in an

---

[5]Section 21101 states: "Unless the provision or context otherwise requires, this part shall apply to a will, trust, deed, and any other instrument."

endless variety of contexts. Their meaning is not subsequently attached to them by the reader but is formulated by the writer and can only be found by interpretation in the light of all the circumstances that reveal the sense in which the writer used the words. The exclusion of parol evidence regarding such circumstances merely because the words do not appear ambiguous to the reader can easily lead to the attribution to a written instrument of a meaning that was never intended.' [Citation.] 'The court must determine the true meaning of the instrument in the light of the evidence available. It can neither exclude extrinsic evidence relevant to that determination nor invoke such evidence to write a new or different instrument.' [Citations.] '[W]hen a judge refuses to consider relevant extrinsic evidence on the ground that the meaning of written words is to him plain and clear, his decision is formed by and wholly based upon the completely extrinsic evidence of his own personal education and experience[.]' [Citations.]" (*Estate of Russell, supra,* 69 Cal.2d at pp. 208-209, original italics.)

*Estate of Russell* further stated: "Accordingly, we think it is self-evident that in the interpretation of a will, a court cannot determine whether the terms of the will are clear and definite in the first place until it considers the circumstances under which the will was made so that the judge may be placed in the position of the testator whose language he is interpreting. [Citation.] Failure to enter upon such an inquiry is failure to recognize that the 'ordinary standard or "plain meaning," is simply the meaning of the people who did *not* write the document.' [Citation.]

"Thus we have declared in a slightly different context that extrinsic evidence as to the circumstances under which a written instrument was made is ' "admissible to interpret the instrument, but not to give it a meaning to which it is not reasonably susceptible" [citation], and it is the instrument itself that must be given effect. [Citations.]' [Citation.] . . . On the other hand an ambiguity is said to exist when, in light of the circumstances surrounding the execution of an instrument, 'the written language is fairly susceptible of two or more constructions.' [Citations.]

"As we have explained, what is here involved is a general principle of interpretation of written instruments, applicable to wills as well as to deeds and contracts. . . . ▮ Under the application of this general principle in the field of wills, extrinsic evidence of the circumstances under which a will is made (except evidence expressly excluded by statute) may be considered by the court in ascertaining what the testator meant by the words used in the will. If in the light of such extrinsic evidence, the provisions of the will are reasonably susceptible of two or more meanings claimed to have been intended by the testator, 'an uncertainty arises upon the face of a will'

[citation] and extrinsic evidence relevant to prove any of such meanings is admissible [citation], subject to the restrictions imposed by statute [citation]. If, on the other hand, in the light of such extrinsic evidence, the provisions of the will are not reasonably susceptible of two or more meanings, there is no uncertainty arising upon the face of the will [citations] and any proffered evidence attempting to show an intention *different* from that expressed by the words therein, giving them the only meaning to which they are reasonably susceptible, is inadmissible." (*Estate of Russell, supra,* 69 Cal.2d at pp. 210-212, fns. omitted & original italics.) ▆▆ Therefore, in this case extrinsic evidence on Viljo's intended meaning of the no contest clause in the Will is admissible if it is relevant to show a meaning to which the language is reasonably susceptible. (*Id.* at pp. 211-212; *Pacific Gas & E. Co. v. G. W. Thomas Drayage etc. Co.* (1968) 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1165 [6 Cal.Rptr.2d 554].) ▆▆ In *Winet*, we stated:

"The decision whether to admit parol [or extrinsic] evidence involves a two-step process. First, the court provisionally receives (without actually admitting) all credible evidence concerning the parties' intentions to determine 'ambiguity,' i.e., whether the language is 'reasonably susceptible' to the interpretation urged by a party. If in light of the extrinsic evidence the court decides the language is 'reasonably susceptible' to the interpretation urged, the extrinsic evidence is then admitted to aid in the second step—interpreting the contract. [Citation.]

"Different standards of appellate review may be applicable to each of these two steps, depending upon the context in which an issue arises. The trial court's ruling on the threshold determination of 'ambiguity' (i.e., whether the proffered evidence is relevant to prove a meaning to which the language is reasonably susceptible) is a question of law, not of fact. [Citation.] Thus the threshold determination of ambiguity is subject to independent review. [Citation.]

"The second step—the ultimate construction placed upon the ambiguous language—may call for differing standards of review, depending upon the parol evidence used to construe the contract. . . ." (*Winet v. Price, supra,* 4 Cal.App.4th at pp. 1165-1166.)[6]

---

[6]*Winet* stated: "When the competent parol [or extrinsic] evidence is in conflict, and thus requires resolution of credibility issues, any reasonable construction will be upheld as long as it is supported by substantial evidence. [Citation.] However, when no parol evidence is introduced (requiring construction of the instrument solely based on its own language) or when the competent parol evidence is not conflicting, construction of the instrument is a

B

 We are not persuaded by Maria's assertion that extrinsic evidence is inadmissible in section 21320 proceedings to determine whether a proposed action would constitute a contest under a no contest clause of a particular will or other instrument. She argues that the Legislature's enactment of section 21304, requiring strict construction of no contest clauses, necessarily precludes admission of extrinsic evidence on Viljo's intent. She also cites *Jacobs-Zorne v. Superior Court* (1996) 46 Cal.App.4th 1064 [54 Cal.Rptr.2d 385], which held that the trial court in that case properly excluded extrinsic evidence on the meaning of a no contest clause, reasoning that the enactment of section 21304 showed the Legislature intended courts to strictly construe no contest clauses by interpreting the plain meaning of an instrument's words without consideration of extrinsic evidence. (*Jacobs-Zorne*, at pp. 1072-1075.) However, in support of its conclusion, *Jacobs-Zorne* cited the *dissenting* opinion in *Burch*. (*Id.* at p. 1074.) It did not refer to the majority opinion's language in footnote 8 as quoted, *ante*, to the effect that extrinsic evidence *is* admissible to show an ambiguity and help construe a no contest clause. (*Ibid.*) Although footnote 8 in *Burch* may be dicta as Maria asserts, the California Supreme Court referred to, and apparently relied on, uncontroverted extrinsic evidence in interpreting the no contest clause in that case (*Burch v. George*, *supra*, 7 Cal.4th at pp. 258, 263, 268). In any event, we are persuaded by the reasoning in *Burch*'s footnote 8 that extrinsic evidence is admissible to show ambiguities and interpret no contest clauses. *Burch* cited section 6111.5, which provides: "Extrinsic evidence is admissible . . . to determine the meaning of a will or a portion of a will if the meaning is unclear." (*Burch*, at p. 258, fn. 8.) *Burch* also cited *Russell*, which we quoted, *ante*, as support for our conclusion that extrinsic evidence generally is admissible to show ambiguities and interpret wills and other instruments. (*Ibid.*)

Although Maria cites section 21304 in support of her position, we are not persuaded that its requirement of strict construction of no contest clauses precludes the admission of extrinsic evidence. It is not necessarily inconsistent to admit extrinsic evidence and also require strict construction of no contest clauses. If the Legislature had intended to preclude admission of extrinsic evidence in interpreting no contest clauses, it could have expressly so provided in 1990 when it enacted section 21304. Furthermore, if the Legislature disagreed with footnote 8 in *Burch*, it presumably would have amended section 21304 or enacted other legislation after 1994 to preclude admission of extrinsic evidence in interpreting no contest clauses. We

question of law, and the appellate court will independently construe the writing. [Citation.]" (*Winet v. Price*, *supra*, 4 Cal.App.4th at p. 1166.)

conclude the trial court in this case correctly determined that extrinsic evidence is admissible to show ambiguities and interpret the no contest clause in the Will.[7]

## III

### *The Court Erred by Denying the Petition Without Considering Extrinsic Evidence*

Maria contends that if extrinsic evidence is admissible in interpreting a no contest clause, the probate court erred by denying the Petition without considering that evidence. She further contends that a determination on the Petition, including consideration of extrinsic evidence in interpreting the Will's no contest clause, does *not* require a determination of the merits of the Proposed Action.

The probate court found there were ambiguous terms and phrases in the Will that required extrinsic evidence for their interpretation. Although we might question the probate court's finding that the Will was ambiguous on its face with respect to the no contest clause, we agree with its conclusion that extrinsic evidence is admissible to determine if an ambiguity exists and to interpret that clause to decide the Petition. Apparently believing that consideration of extrinsic evidence on that issue would necessarily require a determination of the merits of the Proposed Action, and that if it made a decision on the merits of the Proposed Action relief under section 21320 was unavailable, the court denied the Petition. ■ However, we do not agree that consideration of extrinsic evidence requires a determination of the merits of the Proposed Action or that a determination of the merits of the Proposed Action precludes section 21320 relief.

First, section 21320 does not provide that a section 21320 petition may not be granted if a decision on the petition necessarily involves a decision on the merits of the proposed action. Section 21320, subdivision (c) provides that a section 21320 petition is not available for a determination of whether section 21306 (action based on forgery) or section 21307 (action benefiting participant in making the will), neither of which is involved in this case, violates a no contest clause. ■ Section 21320, subdivision (b) provides that the filing of a section 21320 petition does not itself violate a no contest clause unless a determination of the merits of the proposed action is necessarily made in adjudicating the petition. It does not provide that section 21320 relief is unavailable if the merits of the proposed action must be determined

---

[7]In considering extrinsic evidence, trial courts should follow the two-step approach that we discussed in part II.A, *ante*.

to adjudicate the applicability of the no contest clause. A reasonable interpretation of section 21320, subdivision (b) is that if the merits of the proposed action must be determined in adjudicating the petition, the safe harbor of section 21320, subdivision (a) is unavailable. However, the petitioner is nevertheless entitled to a determination of whether the no contest clause is violated by the proposed action. If the court must determine the merits of the proposed action the section 21320 petition itself is not entitled to a safe harbor and the determination on the merits of the proposed action may, or may not, result in a violation of the no contest clause. The reason for this result is that the beneficiary is not entitled to two determinations of the merits of the proposed action. If the merits of the proposed action are determined in the section 21320 proceeding, the petitioner is not entitled to disregard that determination and later decide whether to assert the proposed action; the proposed action will have already been asserted and its merits determined in the section 21320 proceeding. The statement in *Estate of Ferber* (1998) 66 Cal.App.4th 244, 251[77 Cal.Rptr.2d 774] that "[a] ruling on whether the beneficiary's proposed action would be a will contest may not involve a determination on the merits of the action itself" is correct only to the extent it means that if the merits of the action itself must be determined, the section 21320 petition will not be entitled to safe harbor protection.[8]

The dissent concludes that if a section 21320 petition requires a decision on the merits of a proposed action and the section 21320, subdivision (a) immunity is thereby lost, beneficiaries will be deprived of the safe harbor section 21320 was designed to provide them. The dissent's conclusion is perplexing because under the dissent's interpretation, the section 21320 petition must be dismissed without decision if the merits of the proposed action must be decided. Without a decision on whether the proposed action violates the no contest clause the petitioner has not been able to determine whether the proposed action violates the no contest clause. Therefore, there is no more safe harbor provided by section 21320 under the dissent's interpretation than under our interpretation. We conclude the court erred by dismissing the Petition on the grounds that adjudicating the Petition necessarily involved determining the merits of the Proposed Action.

Furthermore, a ruling on the Petition would not require a determination of the merits of the Proposed Action. We are aware of no reported cases in which a determination of the merits of a potential claim was required to

---

[8]*Estate of Ferber* relies on *Genger v. Delsol, supra,* 56 Cal.App.4th 1410, 1428, footnote 17 to support its statement. However, *Genger* involved claims under sections 21306 and 21307 to which the safe harbor section 21320 petition procedure is expressly made unavailable by section 21320, subdivision (c).

adjudicate a section 21320 petition, and we are unable to conjure up a situation in which it would be necessary. The Petition seeks only a determination of whether the Proposed Action, if asserted, would constitute a contest under the Will's no contest clause.[9] The Petition does *not* seek a determination of the merits of the Proposed Action, which would involve whether there was an enforceable domestic partnership agreement between Maria and Viljo. It is not the validity or merits of the Proposed Action that may violate the no contest clause, it is the assertion of the Proposed Action that may violate the no contest clause. Therefore, the merits of the Proposed Action are irrelevant to whether its assertion violates the no contest clause. The Proposed Action either violates or does not violate the Will's no contest clause, regardless of the existence of an enforceable domestic partnership agreement. Because the Petition can be decided regardless of the existence of an enforceable domestic partnership agreement, it is unnecessary in the Petition proceeding to determine the merits of the Proposed Action. Although the Proposed Action, *if filed*, would ask the probate court to decide Maria's domestic partnership agreement claim, the court need not, and should not, address the merits of that potential claim in deciding the Petition.

It is surprising that the dissent relies on *Burch v. George, supra,* 7 Cal.4th 246 as support for its conclusion that to determine whether the Proposed Action would violate the no contest clause, it is necessary to determine the merits of the Proposed Action. To the contrary, *Burch v. George* concluded after an exhaustive analysis of the no contest clause and the admitted extrinsic evidence that the trustor's intent was to force an election by the beneficiary to assert her community property rights or to take under the testamentary disposition in the trust. The court concluded that the assertion of community property rights would, if prosecuted, violate the no contest clause in the testamentary documents. However, this conclusion was reached without regard to or decision on the merits of the validity of the community property rights assertion. Rather than supporting the dissent's position, *Burch* confirms that the merits of the Proposed Action need not be determined to adjudicate the effect of the no contest clause were the Proposed Action filed.

The court erred by denying the Petition without considering extrinsic evidence on the meaning of the Will's no contest clause and without determining whether the Proposed Action, if filed, would violate the no contest clause.

---

[9]The Will's no contest clause states in pertinent part: "If any person shall establish a right to any part of my estate, whether or not such person is related in any way by blood to me *and if I died intestate would be entitled to any part of my estate*, to such person I give and bequeath the sum of $1.00 only, and no further interest in my estate." (Italics added.) On remand, the probate court should consider whether the no contest clause does not apply to Maria because she would not be entitled to any part of Viljo's estate if he had died intestate.

## IV

*Verner's Other Defenses Are Prematurely Raised*

Verner asserts that if the trial court erred by denying the Petition without considering extrinsic evidence on the meaning of the Will's no contest clause, the Petition should nevertheless be denied because of the doctrine of implied election and Maria's failure to timely file a creditor's claim against Viljo's estate.

Because Maria has not filed the Proposed Action, any consideration of defenses to that action is premature at this time. The only pending issue before us is whether the Proposed Action, if filed, would constitute a contest under the Will's no contest clause. Any purported defenses to the Proposed Action, including failure to file a creditor's claim and implied election, are premature and should be raised by Verner only when, and if, the Proposed Action is filed. Therefore, both defenses are prematurely raised in this appeal.

### DISPOSITION

The order is reversed and the matter is remanded for further proceedings consistent with this opinion. Maria is entitled to costs on this appeal.

Nares, J., concurred.

**BENKE, Acting, P. J.**—I respectfully dissent.

## I

Although I agree with my colleagues' determination that parol evidence was admissible in determining whether Maria's domestic partnership claim would be a contest within the meaning of the no contest clause in Viljo's will, I do not adopt the majority's narrow interpretation of the remedies available under the safe harbor provisions of Probate Code[1] section 21320. As they have interpreted the statute, it does not provide anything close to a safe harbor for beneficiaries of wills and trusts. In fact the majority's interpretation will simply recreate the "River Boat" gamble the Legislature plainly intended to eliminate.

In recommending enactment of former section 21305, the statutory predecessor to section 21320, the Law Revision Commission stated: "*A major*

---

[1] All further statutory references are to the Probate Code unless otherwise specified.

*concern with the application of existing California law is that a beneficiary cannot predict with any consistency when an activity will be held to fall within the proscription of a particular no contest clause.* To increase predictability, the proposed law recognizes that a no contest clause is to be strictly construed in determining the donor's intent. This is consistent with the public policy to avoid a forfeiture absent the donor's clear intent. *The law also makes clear that a request by a beneficiary for declaratory relief in the form of a petition for construction of the instrument to determine whether a particular activity would violate a no contest clause does not itself trigger operation of the clause.*" (Recommendation Relating to No Contest Clauses (Jan. 1989) 20 Cal. Law Revision Com. (1990) p. 12, fns. omitted, italics added.) Thus section 21320, subdivision (a), permits a beneficiary to apply to the probate court "for a determination whether particular motion, petition, or other act by the beneficiary . . . would be a contest within the terms of the no contest clause" and section 21320, subdivision (b), provides that "[a] no contest clause is not enforceable against a beneficiary to the extent an application under subdivision (a) by the beneficiary is limited to the procedure and purpose described in subdivision (a)."

Importantly, the relief permitted by section 21320, subdivision (a), does not permit a beneficiary to obtain a ruling on the merits of his or her claim. (§ 21320, subd. (b).) As the court in *Estate of Ferber* (1998) 66 Cal.App.4th 244, 251 [77 Cal.Rptr.2d 774], stated: "A ruling on whether the beneficiary's proposed action would be a will contest may not involve a determination on the merits of the action itself. [Citation.] This makes sense. Otherwise, the summary procedure could be used to allow the very form of challenge and protracted litigation the testator sought to prevent." (See also *Genger v. Delsol* (1997) 56 Cal.App.4th 1410, 1428, fn. 17 [66 Cal.Rptr.2d 527]; 20 Cal. Law Revision Com. (1990) pp. 1981-1982.)

Notwithstanding the express immunity provided by section 21320, subdivision (b), and the express intent of the statute's drafters that beneficiaries be able to obtain a determination as to the scope of a no contest clause without triggering enforcement of the clause, the majority opinion holds that a no contest clause may be enforceable against a section 21320 applicant. (Maj. opn., *ante*, at pp. 1135-1136.) My colleagues hold that under section 21320 the probate court must always determine the scope of a no contest clause and that when an application under the statute requires a determination of the merits of the beneficiary's claim, the immunity provided by section 21320, subdivision (b), is simply lost. (Maj. opn., *ante*, at pp. 1135-1136.) Under the majority's holding, a beneficiary will be taking a considerable risk in employing section 21320, subdivision (a). If a court finds both that the no contest clause covers the beneficiary's proposed claim and that in making

that determination it reached the merits of the proposed claim, under the majority holding the no contest clause will have been triggered and the beneficiary will get nothing under the terms of the will or trust. As a practical matter, the majority's interpretation deprives beneficiaries of the safe harbor that section 21320 was plainly designed to give them.

I would avoid the risk to beneficiaries the majority has created by interpreting the limitation set forth in section 21320, subdivision (b), not as a limitation on the immunity the statute provides, but as a limitation on the declaratory relief available under the statute. Thus where construction of a no contest clause requires a resolution of the merits of a beneficiary's claim, like the probate court, I would read the statute as requiring that the section 21320 application be denied. This interpretation gives full effect to the prohibition on using section 21320 as a means of obtaining a ruling on the merits of a proposed claim but avoids entirely the possibility that a section 21320 application will trigger enforcement of a no contest clause. I would add this is the interpretation apparently adopted by the only other cases which have discussed the issue, *Estate of Ferber, supra,* 66 Cal.App.4th at page 251, and *Genger v. Delsol, supra,* 56 Cal.App.4th at page 1428, footnote 17.

In short, as one commentator has noted, when a determination on the merits is required, a section 21320 petition is not appropriate and "the beneficiary must take the proposed action in order to find out whether the action constitutes a contest." (Cal. Trust and Probate Litigation (Cont.Ed.Bar 2001) No Contest Clauses and Other Obstacles to Litigation, § 5.11, pp. 90-91.)

## II

Like the probate court, I find that in determining the scope of the no contest clause, the court will inevitably be required to determine the merits of Maria's domestic partnership claim and that accordingly, relief under section 21320 is not available.

In *Burch* the court found that the decedent intended "to put his surviving spouse to an election between taking the distribution provided for her under the trust, or alternatively, renouncing that distribution and taking against the trust estate pursuant to her independent legal rights. This intention appears from the declaration in the recital that the property subject to the trust is and is to remain the trustor's 'separate property.'" (*Burch v. George* (1994) 7 Cal.4th 246, 257 [27 Cal.Rptr.2d 165, 866 P.2d 92] (*Burch*).) The court found that this interpretation was supported by the extrinsic evidence offered

by the trustee: "This evidence is uncontroverted that [the husband] transferred the disputed assets to the trust, that he intended that the trust dispose of these assets, and that any assertion of independent rights to these assets by [the wife] would trigger the no contest clause." (*Id.* at p. 258.)

Here, Viljo's will recites that he is not married and has in mind the nature and extent of his estate. The will then makes a substantial bequest to Maria and bequests a dollar to any person who "shall establish a right to any part of my estate, *whether or not such person is related in any way by blood to me* and if I died intestate would be entitled to any part of my estate." (Italics added.) Arguably, these provisions of the will support Verner's contention that, like the decedent husband in *Burch,* Viljo intended to compel Maria to make an election between accepting the bequest provided by the will and asserting any rights she may have thought she had as his domestic partner.

However, the inference raised by the cited provisions of Viljo's will is just that, an inference. The inference is in no sense compelling and does not exclude the possibility that, as Maria contends, the will was intended to dispose of only one-half of the property Viljo acquired during his 30-year relationship with Maria. Indeed, her interpretation of the will is supported to some extent by the statement that the will is intended to dispose of property Viljo has the "right to dispose of by will."

Given the conflicting inferences arising from the face of the will, the need for extrinsic evidence as to Viljo's intent is unmistakable. In particular, extrinsic evidence as to how Viljo viewed the property held in his name at the time of his death would be particularly relevant. (See *Burch, supra,* 7 Cal.4th at pp. 257-258.) For instance, evidence of conduct or statements by Viljo which reflect a belief that he was the sole owner of the property would tend to support Verner's interpretation that Viljo meant to compel an election by Maria. Even if his belief as to his unfettered right to control the property was erroneous, his belief would still be relevant with respect to his intent at the time he executed his will. (*Ibid.*) On the other hand, any references to joint ownership or conduct which suggested an acknowledgment by Viljo of Maria's partnership interest in his property would tend to support Maria's contention that Viljo intended that the will only cover his interest in property acquired during the course of their relationship.

In considering whatever in the nature of extrinsic evidence the parties may offer as to how Viljo viewed his property, the probate court would inevitably be drawn in to the merits of Maria's domestic partnership claim. In this regard I note that in addition to finding that domestic partners may expressly agree to share ownership of property held in the name of only one partner,

the court in *Marvin v. Marvin* (1976) 18 Cal.3d 660, 684 [134 Cal.Rptr. 815, 557 P.2d 106], found that an implied agreement to share property may also be enforced. In determining whether such an implied agreement existed: "The courts may inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract or implied agreement of partnership or joint venture [citation], or some other tacit understanding between the parties." (*Ibid.*) This of course is almost the same inquiry that will be required in order to determine Viljo's testamentary intentions. (See *Burch, supra*, 7 Cal.4th at pp. 257-258.)

In sum then, I conclude relief under section 21320 is not available because in interpreting Viljo's will, the probate court will be required to determine the merits of Maria's domestic partnership.

I would affirm the probate court's order.

A petition for a rehearing was denied January 23, 2002.